GLANN v. WHITE.

1. DAMAGES—PROFITS—LOSS OF CROPS—BREACH OF WARRANTY.
It was not prejudicial error to submit to the jury, as an element of damages for false representations or warranty of a team of horses, the question of plaintiff's right to recover for delay in his farm work and loss of crops resulting from the sickness and death of one of the horses which proved to be sick of distemper or influenza; knowledge or notice of the purpose for which the horse was purchased being established, the record also showing that the jury made no allowance for such loss of profits. OSTRANDER, BIRD, and STEERE, JJ.. dissenting, on the ground that the loss of profits should not have been submitted to the jury.

2. TRIAL—INSTRUCTIONS TO JURY—NEGLIGENCE.
Where the court charged the jury that if defendant warranted the horse that died to be sound, and at the time

of sale the horse was diseased and the disease was aggravated by driving, after plaintiff knew or should have known of the fact that the horse was sick, and it would probably have lived if the plaintiff had given it proper care, plaintiff would not be entitled to the full value of the animal, and on plaintiff's attorney suggesting that the court had omitted to insert in the instruction the limitation of said duty of acting with that care which an ordinarily prudent man would act, and where the court told the jury that he would be held to the exercise of ordinary care, required to act as an ordinarily prudent man would, the jury would not be presumed to have followed the previous instruction.

3. SAME—FRAUD—CONSEQUENTIAL LOSS.

In an action of tort it is not improper to permit a recovery for indirect or consequential injuries resulting from the wrongful act. OSTRANDER, BIRD, and STEERE, JJ., dissenting.

Error to Lapeer; Smith, J. Submitted January 23, 1914. (Docket No. 119.) Decided July 24, 1914.

Case by Loren Glann against Ripley White and Kirk White, copartners as White Bros., for breach of warranty of the soundness of a team of horses. Judgment for plaintiff. Defendants bring error. Affirmed.

*Geer, Williams & Halpin,* for appellants.

*Clarence A. Cameron (Farley & Selby,* of counsel), for appellee.

This action arises from an alleged breach of warranty of the soundness of a team of horses sold by defendants to plaintiff on April 24, 1912, at Lapeer, Mich. The team was driven by the son of the plaintiff to Flint, a distance of 20 miles, where they were placed in a feed barn and taken care of. Before arriving at Flint, the son had noticed that one of the horses did not travel as well as the other one, and had coughed a little on the way. After the rest at Flint, the team was driven to Flushing, the home of plaintiff,

a distance of about 10 miles. The horse would not eat, was taken sick, and died a week later. A veterinary who was called diagnosed the disease as influenza, commonly known as horse distemper, a contagious, infectious disease, and four other horses of plaintiff were taken sick. This action is brought in trespass on the case, and damages, actual and consequential, were claimed. The items of plaintiff's claim are as follows:

| | |
|---|---:|
| Value of horse that died | $250 00 |
| Veterinary bill | 37 10 |
| Care and medicine | 50 00 |
| Damages to plaintiff in delaying farm work | 100 00 |
| Expense of looking for another farm horse | 25 00 |
| | $462 10 |

The jury rendered a verdict in favor of the plaintiff in the sum of $262.10. From a judgment entered thereon, defendants appeal by writ of error.

KUHN, J. (after stating the facts). It is the contention of appellants that the court erred in permitting plaintiff to testify as to the number of acres of different kinds of crops he intended to put in in the spring of 1912 and the number he was prevented from putting in because of the loss of the horse and the sickness of the others. It is urged that these damages are too remote, contingent, uncertain, and speculative. At the time the team was purchased, the defendants knew the purpose for which it was bought, as defendant Ripley White testified:

"They [plaintiff and son] were going to farm it. They had sugar beets to get in, and wanted another team."

In this action it was proper for plaintiff to recover compensation for all loss or injury sustained. *Allison* v. *Chandler*, 11 Mich. 542; *Arnold* v. *White*, 153 Mich. 607 (117 N. W. 164); *Krzyszke* v. *Kamin*, 163 Mich. 290 (128 N. W. 190); 13 Cyc. p. 34.

Mr. Justice CHRISTIANCY, in a very instructive opinion in *Allison* v. *Chandler, supra,* in speaking of this kind of damages, said (page 554):

"The law does not require impossibilities, ana cannot, therefore, require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount, so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. This should, of course, be done with such instructions and advice from the court as the circumstances of the case may require, and as may tend to prevent the allowance of such as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury.

"In the adoption of this course it will seldom happen that the court, hearing the evidence, will not thereby possess the means of forming a satisfactory judgment whether the damages are unreasonable, or exorbitant; and, if satisfied they are so, the court have always the power to set aside the verdict and grant a new trial."

Again, at page 558:

"But it is insisted that loss of profits constitutes no proper ground or element of damages. If there be any such rule of law, it is certainly not a universal, and can hardly be called a general rule. Decisions, it is true, may be found which seem to take it for granted that the rule is universal. But there are numerous cases, even for breach of contract, in which profits have been properly held to constitute, not only an *element,* but a *measure* (and sometimes the only *measure*) of damages, as in *Masterton* v. *Mayor,* 7

Hill [N. Y.], 61 [42 Am. Dec. 38] ; *Philadelphia, etc., R. Co.* v. *Howard,* 13 How. 344."

We are of the opinion that it was proper for the trial judge to submit the question of the consequential damages to the jury, although it is clearly evident from the verdict that they did not consider favorably this phase of the plaintiff's claim.

The other assignments of error relate to the judge's charge. The judge charged as follows:

"Upon the part of the defendants, I charge you as follows: That if you shall find from the evidence that defendant warranted the horse that died to be sound, and that at the time of the sale she had a horse disease in its incipient stage, still if you further find that the effect of the disease was aggravated by the treatment the horse received in being driven after she was known to be sick, and that plaintiff knew or should have known from his knowledge of or his experience with horses that the disease would be aggravated by further driving, and that she would probably not have died if she had received proper care at that time, you would not be warranted in finding that the mare was worthless at the time of the sale, and in awarding damages on that basis."

At the close of the charge the following colloquy occurred between the court and counsel:

"*Mr. Halpin:* I have another request I would like given.

"*Mr. Cook:* I object to it.

"*The Court:* I covered part of what is in this already. Swear two officers.

"*Mr. Cook:* You did not use the words 'a man of ordinary care and prudence.' I think that the suggestion, that is, if you would use—you stated in your charge to the jury that, if the plaintiff drove from Flint—

"*The Court:* This is the language I used: 'The plaintiff knew or should have known from his knowledge or experience with horses that the disease would be aggravated by the driving.' I am willing to add to that that he should have been held to have acted as

a reasonably prudent man will under those circumstances.

"*Mr. Cook:*   The last part, contributory part.

"*The Court:*   I add, gentlemen, upon the question of whether he was justified in driving a horse home from Flint to Flushing, that he would be held to have acted as a reasonably prudent man would under those circumstances.

"*Mr. Halpin:*   I think that needs a little explanation by what the court means he would 'be held.'

"*The Court:*   I think it is sufficiently plain with what I have already said.

"*Mr. Halpin:*   The objection I made to the last statement, the jury might not understand that he be held; they must find that he did as an ordinarily prudent man, or he would be required to do as an ordinary prudent man would do.

"*The Court:*   To be required to act as a reasonably prudent man would.   If a reasonably prudent man situated as he was would not have driven the horse home, then he would have been held to that doctrine; if a reasonably prudent man would have driven it home, then he would have a right to drive it home; consider that, gentlemen, as part of the charge."

It is urged that the final instruction is inconsistent with that portion previously given, and it is to be presumed that the jury may have followed the erroneous instruction.   This colloquy occurred in the presence of the jury, and it is clear that the judge indicated to the jury that his purpose was to modify his original charge, and in plain language instructed them as to their duty in the matter.   When the trial judge's attention was called to the question, he did all that he could do, viz., to modify his charge and give the proper instruction.

We have considered the other assignments of error relating to the charge, and are satisfied that they do not demand a reversal of the case.

Judgment is affirmed.

MCALVAY, C. J., and BROOKE and STONE, JJ., concurred with KUHN, J.

OSTRANDER, J.   I think testimony of consequential injury—damages arising from failure to put in crops —was erroneously received, and, having been received, it was error for the court to submit the matter of plaintiff's loss of profits to a jury.

I concur in affirming the judgment upon the ground that it is apparent the jury allowed nothing to plaintiff for loss of profits.

BIRD and STEERE, JJ., concurred with OSTRANDER, J. MOORE, J., did not sit.