## Commonwealth, Appellant, v. Seechrist.

*Habeas corpus—Summary conviction—Fish laws—Justice of the peace—Res adjudicata.*

A writ of habeas corpus cannot be made a substitute for a writ of error, and where a party is in custody by virtue of a final decree or judgment, or process thereon, of a court of competent jurisdiction, no inquiry into the process which led to the decree is to be had, and no relief administered on habeas corpus.

Where a person is summarily convicted before an alderman of using a fish basket without taking out its bottom at sunrise and keeping it out until sunset, and of using an eel basket without taking out a license, and he takes both an appeal and certiorari, and is defeated in both proceedings, he is not thereafter entitled to have the judgment reversed in habeas corpus proceedings.

Argued Nov. 16, 1904.   Appeal, No. 159, Oct. T., 1904, by plaintiff, from order of C. P. Lancaster Co., Habeas Corpus

424    COMMONWEALTH, Appellant, *v.* SEECHRIST.

Statement of Facts—Opinion of the Court.    [27 Pa. Superior Ct.

Docket No. 2, page 318, discharging prisoner on habeas corpus proceedings in case of Commonwealth v. Isaac Seechrist. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Petition for habeas corpus.

The facts appear by the opinion of the Superior Court.

*Error assigned* was the order of the court.

*W. H. Roland*, with him *F. S. Groff*, district attorney, for appellant.—The judgment before the alderman and the conviction could not be set aside by habeas corpus proceedings unless for want of jurisdiction.

The certiorari and appeal of the defendant in this case having been decided against him, the matter was res adjudicata, and after a conviction no other question could be raised except the jurisdiction of the alderman: Graham's Petition, 46 Legal Int. 88; In re Coy, 127 U. S. 731 (8 Sup. Ct. Repr. 1263); In re Frederich, 149 U. S. 70 (13 Sup. Ct. Repr. 793); Williamson's Case, 26 Pa. 9; Com. v. Keeper of Debtors' Apartment, 1 Ashmead, 10; Ex parte Mitchell, 104 Mo. 121 (16 S. W. Repr. 118).

*John E. Malone*, with him *H. B. Lutz*, for appellee.—In a summary conviction, the complaint being in the nature of an indictment, must contain a direct and positive charge against the defendant, with a complete statement of the offense; the evidence given upon the trial can only support the original charge, and can by no means extend or supply what is wanting in the complaint: Com. v. Gelbert, 170 Pa. 426; Com. v. Phelps, 170 Pa. 430.

OPINION BY ORLADY, J., March 14, 1905:

The essential requisites in a case of summary conviction have been declared and enumerated so clearly and forcibly in Commonwealth v. Borden, 61 Pa. 272; Commonwealth v. Davison, 11 Pa. Superior Ct. 130; Commonwealth v. Ayers, 17 Pa. Superior Ct. 352; Commonwealth v. Gelbert, 170 Pa. 426, and

the authorities therein cited that nothing would be gained in reviewing them.

The complaint in this case was that the defendant did " use a fish basket, without taking out its movable bottom at sunrise, and keep out such movable bottom until sunset, for fishing, . . . . and did neglect to take out the license required authorizing fishing with eel baskets ; said fish basket being a device used for fishing by defendant not permitted by, and being contrary to, the acts of assembly of the commonwealth of Pennsylvania in such cases made and provided." After due notice the defendant appeared, and a full hearing was had before the alderman who determined the guilt of the defendant and convicted him, as stated in the record, " that the said Isaac Seechrist did maintain and use the said fish basket or device as charged in the information and complaint made." The judgment was entered and sentence imposed in strict conformity with section 38 of the Act of May 29, 1901, P. L. 302, which prescribes the penalty for violations of the provisions of that act. The complaint was a specific charge of maintaining and using a fish basket or device not permitted by and being contrary to law.

The defendant took an appeal from the judgment of the alderman, which was subsequently striken off for irregularities. He then sued out a certiorari, on the hearing of which every item of defense which is here presented was urged in the court below, and his exceptions were overruled. The judgment of the alderman thus became absolute and can be disregarded only for want of jurisdiction. A writ of habeas corpus was next allowed on his petition in which he alleged that he was confined unjustly in the custody of the constable, by virtue of the commitment issued by the alderman. After a hearing the prisoner was discharged for the reason, as stated by the learned court below, that the Act of April 27, 1903, P. L. 319, does not prescribe any penalty for the offenses alleged in the complaint " under which the proceedings were had and that there was no other violation of the fish laws." This conclusion was reached upon the finding by the court—that the complaint sets forth but two offenses, one, the use of a fish basket without taking out its movable bottom at sunrise and keeping it out until sunset ; and the other, for failure to take out a license. The com-

monwealth sued out an appeal and the order discharging the relator from custody being a final one (Com. v. Butler, 19 Pa. Superior Ct. 626), we have the whole record before us. The interpretation of the complaint by the lower court is certainly more narrow and restricted than that given to it by the alderman, who found that the defendant maintained and used a fish basket or device as charged in the formation, which in said complaint is declared to be " a device for fishing not permitted by and contrary to law ; " and the defendant evidently so understood it as shown by the record, " defendant sworn and gives evidence that the fish basket or device is in and on his premises as charged." In order to avail himself of the provisions of the Act of April 27, 1903, the defendant must have complied with its provisions, else the fish basket or device described in and on his premises as charged was an illegal construction, not warranted by any statute and violative of the provisions of the Act of May 29, 1901, P. L. 302, which was a codification of the former fish laws. Its first section classifies the game and food fishes and prohibits fishing for game fish in any manner except by rod, hook and line, or with hand lines; or for food fish, with any other device than as specifically permitted by the act.

Carp, catfish, eels and suckers are not in either class of game or food fish, and these may be taken in eelpots, dip, fyke or seine nets, and by lay-out lines, at special seasons as described in sections 6, 7, 8, 9, and 11 of the act; and by section 31 they may be taken at any time of the year with rod, hook and line, or with hand line not having more than three hooks. By section 37 of the Act of 1901 possession or operation of such a device or appliance prohibited or not permitted by law is made prima facie evidence of the violation of the act. There is no statute which authorizes the maintenance or use of a fish basket or device as charged in the information, except as provided by the permissive Act of April 27, 1903, P. L. 319, and by its provisions it is declared that the penalty for using such a basket at any other time or in any other manner, and for catching and taking any other fish than eels shall remain as heretofore. The second section prescribes the manner in which such an eel basket may be licensed so as to be an authorized construction.

No penalty is fixed for the violation of the provisions of this Act of 1903, but none is necessary, inasmuch as the whole appliance or device would be an unlawful construction and punishable under the Act of 1901 unless the terms of the Act of 1903 were observed.    Eels may be caught in a basket only when the kind of basket defined in the act is used, and when the prescribed license is procured.    The repeal of the ninth section of the Act of 1901 by the Act of March 20, 1903, P. L. 44, refers to the use of seine nets only and no other part of the act is affected.

This record shows that the defendant is being prosecuted for a matter which is embraced in a statute which prohibits its commission, and one over which the alderman did have jurisdiction: Commonwealth v. Ketner, 92 Pa. 372.    In a habeas corpus case, as stated by Judge SMITH in Commonwealth v. Gibbons, 9 Pa. Superior Ct. 527 : " We are to ascertain whether the court below had jurisdiction in the premises, and exercised it according to law; whether the offense of which the relator stands convicted was one which the court had power to punish summarily and whether the sentence was lawfully imposed."    See also Commonwealth ex rel. Nuber v. Keeper of Workhouse, 6 Pa. Superior Ct. 420 ; Ex parte Lange, 85 U. S. 163.

The power to discharge from custody by writ of habeas corpus is one that should be exercised with extreme caution and only in a clear case.    It must also be exercised in aid of the administration of justice, not to defeat or needlessly embarrass it: Quay's Petition, 189 Pa. 517.    After a legal trial in a court of competent jurisdiction and in which a proper judgment has been entered against him, and which we deem sufficiently regular to sustain the commitment, the defendant had his right of appeal under the Act of April 17, 1876, P. L. 29, or by certiorari.    He resorted to each of these remedies in turn and failed in his contention.    He now seeks to have the court of common pleas set aside the judgment of another court of co-ordinate jurisdiction, which cannot be done : Doyle v. Commonwealth, 107 Pa. 20.    A writ of habeas corpus cannot be made a substitute for a writ of error, and where a party is in custody by virtue of a final decree of judgment, or process thereon, of a court of competent jurisdiction, no inquiry into the process which led

to the decree is to be had, and no relief administered on habeas corpus: Commonwealth v. Keeper of the Jail, 26 Pa. 279 ; Com. v. McCabe, 22 Pa. 450.

In Commonwealth ex rel. Nuber v. Keeper of Workhouse, 6 Pa. Superior Ct. 420, this court allowed a writ of habeas corpus and released from custody one who had been sentenced upon a valid judgment, for the reason that the power of the court below had been exhausted in imposing the original sentence which could not be subsequently amended, hence the court was without jurisdiction to make the order under which she was then held, after the term at which trial, conviction and partial sentence occurred, to alter or reform it.

The record of the alderman is free from error as to jurisdiction, procedure or sentence.    The judgment of the court of common pleas in discharging the defendant in this proceeding is reversed, and the record is remitted to the court below, that the judgment entered by the alderman may be carried into effect.